1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ANGELIQUE MORRISON,

11          Plaintiff,                    No.  CIV S-06-0182 DAD

12       v.

13   MICHAEL J. ASTRUE,                   ORDER
     Commissioner of Social Security,[1]
14
            Defendant.
15   _____/

16          This social security action was submitted to the court, without oral argument, for

17   ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary

18   judgment.  For the reasons explained below, the decision of the Commissioner of Social Security

19   (Commissioner) is affirmed.

20                          **PROCEDURAL BACKGROUND**

21          On May 31, 2003, plaintiff Angelique Morrison applied for Supplemental

22   Security Income (SSI) benefits under Title XVI of the Social Security Act (Act).  (Transcript

23   (Tr.) at 67-70.)  The Commissioner denied plaintiff's application on September 26, 2003.  (Tr. at

24   

25          [1]   On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.
     Mr. Astrue is substituted as defendant in this suit pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ.
26   P. 25(d)(1).

                                        1

34-38.)  A request for reconsideration was also denied.  (Pl.'s Mot. for Summ. J. at 1.)  Pursuant

to plaintiff's request dated November 17, 2003, a hearing was held before an administrative law

judge (ALJ) on April 20, 2005, at which time plaintiff was represented by counsel.  (Tr. at 41,

275-303.)  In a decision issued on July 28, 2005, the ALJ determined that plaintiff was not

disabled.  (Tr. at 11-25.)  The ALJ entered the following findings:

1.  The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2.  The claimant's depression, generalized anxiety disorder, possible schizoaffective disorder, and possible personality disorder are considered "severe" based on the requirements in the Regulations 20 CFR § 416.920(c).

3.  These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4.  The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

5.  The claimant has the following residual functional capacity: unskilled work.

6.  The claimant has no past relevant work (20 CFR § 416.965).

7.  The claimant is a 'younger individual' (20 CFR § 416.963).

8.  The claimant has 'a high school (or high school equivalent) education' (20 CFR § 416.964).

9.  The claimant has no exertional limitations (20 CFR § 416.945).

10.  Considering the range of work at all levels that the claimant is still functionally capable of performing, in combination with her age, education, and work experience, and using section 204.00 of the Medical-Vocational Guidelines as a framework for decision-making, the claimant is not disabled.

/////

1           11.    The claimant was not under a "disability," as

2                defined in the Social Security Act, at any time
through the date of this decision (20 CFR §

3                416.920(g)).

4  (Tr. at 24-25.)

5        Plaintiff requested review of the ALJ's decision, but the Appeals Council declined

6  review on November 22, 2005.  (Tr. at 4-6, 9.)  Plaintiff then sought judicial review pursuant to

7  42 U.S.C. § 405(g) by filing the complaint in this action on January 26, 2006.

8                          **LEGAL STANDARD**

9        The Commissioner's decision that a claimant is not disabled will be upheld if the

10  findings of fact are supported by substantial evidence and the proper legal standards were

11  applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000);

12  Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).  The findings of

13  the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  See Miller

14  v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such relevant evidence as

15  a reasonable mind might accept as adequate to support a conclusion.  Morgan, 169 F.3d at 599;

16  Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389,

17  401 (1971)).

18        A reviewing court must consider the record as a whole, weighing both the

19  evidence that supports and the evidence that detracts from the ALJ's conclusion.  See Jones, 760

20  F.2d at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum

21  of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

22  substantial evidence supports the administrative findings, or if there is conflicting evidence

23  supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

24  Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

25  improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

26  1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under the Social Security regulations.  Title 20 of the Code of Federal Regulations, Section 404.1520, sets forth the test used to assess disability.  See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  This five-step process can be summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is conclusively presumed disabled.  If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff advances five arguments in her motion for summary judgment.  First, she asserts that the ALJ failed to consider all of her mental impairments at step two of the sequential evaluation.  Second, plaintiff contends that the ALJ erred at step three by failing to find that her mental impairments met or equaled the criteria established under Listing 12.03.  Third, plaintiff maintains that the ALJ unlawfully rejected the opinions of plaintiff's treating psychiatrist, the

agency's consultative psychiatrist, and a consultative psychologist.  Fourth, plaintiff argues that the ALJ failed to properly credit her statements as to the nature and extent of her functional limitations.  Fifth, plaintiff contends that the ALJ erred by finding plaintiff disabled based on application of the grids.  The court addresses each of plaintiff's arguments below.

**I.  Consideration of All Mental Impairments at Step Two**

        It is well established that at step two of the sequential evaluation process the ALJ must determine if the claimant has a medically severe impairment or combination of impairments.  Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41).  The purpose of step two of the sequential evaluation is merely to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account.  Yuckert, 482 U.S. at 153.  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'"  Smolen, 80 F.3d at 1290 (citations omitted).  See also 20 C.F.R. §§ 404.1521(a) and 416.921(a).

        Here, plaintiff seeks disability benefits on the basis of significant mental impairments.  The ALJ reviewed the evidence of record for the relevant period of time, found that plaintiff did not have any severe physical impairments,[2] and determined that plaintiff's only severe impairments are mental impairments.  (Tr. at 19.)  The ALJ found medical evidence indicating that plaintiff "has depression, generalized anxiety disorder, possible schizoaffective disorder, and possible personality disorder," all of which constitute severe impairments, i.e., individually or in combination the impairments significantly limit plaintiff's ability to do basic work activities.  (Tr. at 19 (citing 20 C.F.R. § 416.920).)

/////

---

        [2]  The ALJ considered plaintiff's history of chronic hepatitis C and her allegation of exercise-induced asthma but found no evidence of either medical treatment or complaints regarding either condition during the period at issue.  (Tr. at 19.)

1    Plaintiff argues that the ALJ improperly circumscribed her claim by (1)
2    characterizing her specific diagnosis of schizoaffective disorder, paranoid type, as "possible
3    schizoaffective disorder," (2) characterizing her specific diagnosis of paranoid personality
4    disorder and personality disorder with borderline and anti-social traits as "possible personality
5    disorder," and (3) failing to include, as a separate impairment in addition to generalized anxiety
6    disorder, her specific diagnosis of anxiety disorder with panic attack.  Plaintiff asserts that the
7    ALJ's failure to identify and list her specific diagnoses as severe impairments foreclosed serious
8    consideration of all symptoms that arose from her impairments, including anxiety, paranoia,
9    mood swings, isolative behavior, and panic attacks.

10    The administrative record reflects the following diagnoses of plaintiff's mental
11    impairments:  on August 19, 2003, Edward Ritvo, M.D., conducted a psychiatric consultative
12    examination and diagnosed generalized anxiety disorder with panic attacks and polysubstance
13    abuse, apparently in remission (tr. at 128-33); on April 23, 2004, Robert Barker, M.D., plaintiff's
14    treating psychiatrist, diagnosed schizoaffective disorder, bipolar type (tr. at 230); on July 1, 2004,
15    a psychologist at Granada Hills Mental Health Center, where plaintiff was treated from July 2004
16    through September 2004, diagnosed plaintiff with schizoaffective disorder, bipolar type (tr. at
17    269); on September 21, 2004, Rosa Colonna, Ph.D., conducted a psychological consultative
18    examination and diagnosed polysubstance dependence in remission, mood disorder, and
19    personality disorder with borderline and anti-social traits (tr. at 223); on April 21, 2005, Robert
20    C. Boyle, Psy.D., conducted a psychological evaluation on referral by plaintiff's attorney and
21    diagnosed major depression with psychotic features, anxiety disorder, history of amphetamine
22    dependence, and paranoid personality disorder (tr. at 260).

23    The court finds that the ALJ's list of plaintiff's severe mental impairments –
24    depression, generalized anxiety disorder, possible schizoaffective disorder, and possible
25    personality disorder – accurately reflects the diagnoses made by all treating and consultative
26    mental health professionals.  The broad characterization of plaintiff's severe mental impairments

1   did not screen out any severe impairments or preclude consideration of any symptoms arising

2   from the impairments.  Plaintiff's arguments in this regard are unpersuasive.

3   **II.  <u>Determining Whether the Criteria of Listing 12.03 Were Met or Equaled</u>**

4            At step three of the sequential evaluation process, a claimant who demonstrates

5   that he or she suffers from a severe impairment that is either listed in Appendix 1 of the

6   regulations or equal to a listed impairment will be found disabled without regard to age,

7   education, and work experience.  20 C.F.R. § 404.920(d).  The Listing of Impairments in

8   Appendix 1 "describes for each of the major body systems impairments that [are] consider[ed] to

9   be severe enough to prevent an individual from doing any gainful activity."  20 C.F.R. §

10  416.925(a).  However, a claimant's impairment will not be considered listed solely because the

11  claimant has the diagnosis of a listed impairment; the impairment must satisfy all of the medical

12  criteria of the listing.  20 C.F.R. § 416.925(d).  <u>See also</u> <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530

13  (1990); <u>Marcia v. Sullivan</u>, 900 F.2d 172, 175 (9th Cir. 1990).

14           An impairment that is not listed in Appendix 1 may be found medically equivalent

15  to a listed impairment "if it is at least equal in severity and duration to the criteria of any listed

16  impairment."  20 C.F.R. § 416.926(a).  <u>See also</u> <u>Tackett</u>, 180 F.3d at 1099.  If a claimant has

17  more than one impairment, and no individual impairment meets or equals a listed impairment,

18  the Commissioner must review the findings related to all of the claimant's impairments to

19  determine whether the findings are of medical significance equal to those of a listed impairment.

20  <u>Id.</u>  <u>See also</u> <u>Marcia</u>, 900 F.2d at 175-76; 42 U.S.C. § 423(d)(2)(B); Social Security Ruling (SSR)

21  83-19 ("An impairment 'meets' a listed condition . . . only when it manifests the specific findings

22  described in the set of medical criteria for that listed impairment.").

23           Here, plaintiff alleges that she met the criteria of Listing 12.03.  This listing, titled

24  "Schizophrenic, Paranoid and Other Psychotic Disorders," is "[c]haracterized by the onset of

25  psychotic features with deterioration from a previous level of functioning."  20 C.F.R. Pt. 404,

26  Subpt. P, App. 1, § 12.03.

The requirements for meeting or equaling Listing 12.03 are as follows:

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A.  Medically documented persistence, either continuous or intermittent, of one or more of the following:

1.  Delusions or hallucinations; or

2.  Catatonic or other grossly disorganized behavior; or

3.  Incoherence, loosening of associations, illogical thinking, or poverty of content of speech if associated with one of the following:

a.  Blunt affect; or

b.  Flat affect; or

c.  Inappropriate affect; or

4.  Emotional withdrawal and/or isolation

AND

B.  Resulting in at least two of the following:

1.  Marked restriction of activities of daily living; or

2.  Marked difficulties in maintaining social functioning; or

3.  Marked difficulties in maintaining concentration, persistence, or pace; or

4.  Repeated episodes of decompensation, each of extended duration;

OR

C.  Medically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1.  Repeated episodes of decompensation, each of extended duration; or

/////

> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03.

Here, the ALJ determined that plaintiff's mental impairments do not meet or medically equal, either singly or in combination, any impairment listed in Appendix 1. (Tr. at 19.) The ALJ followed the procedures contained in 20 C.F.R. § 416.920a to assess the severity of plaintiff's mental impairments by rating the degree of plaintiff's functional loss arising from her impairments. (Tr. at 19.) The ALJ gave careful consideration to the four areas of functioning referred to as the "B" criteria as well as the "C" criteria. (Tr. at 19-21.) On the basis of his assessment of these criteria, the ALJ found that plaintiff's mental impairments, although severe, do not meet or equal the requirements of any listed impairment. (Id.)

At step three, it is the claimant who bears the burden of proof. See Yuckert, 482 U.S. at 146 n.5. It was therefore plaintiff's burden in this case to establish the necessary degree of functional loss and to demonstrate satisfaction of the requirements of Listing 12.03. Plaintiff's mere argument that she met the requirements of Listing 12.03 is unpersuasive. The court finds that substantial evidence supports the ALJ's determination at step three of the sequential evaluation, and the determination must be affirmed. See Sprague, 812 F.2d at 1229-30.

**III. ALJ's Rejection of Medical Opinions**

Plaintiff argues that the ALJ rejected the opinions of her treating psychiatrist, the agency's consultative psychiatrist, and a consultative psychologist.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester, 81 F.3d at 830. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion

of doctors who do not treat the claimant." Id.  This is so because a treating doctor has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen, 80 F.3d at 1285.  "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons."  Lester, 81 F.3d at 830 (quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)).  Of course, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113-14 (9th Cir. 1999) (rejecting a treating physician's conclusory, minimally supported opinion); see also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

"Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing."  Lester, 81 F.3d at 830 (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).  If the treating professional's opinion is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes, 881 F.2d at 751).  The opinion of a non-examining professional, without other evidence, is an insufficient basis for rejecting the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

Here, plaintiff asserts that the ALJ (1) completely rejected the opinion of Dr. Barker, plaintiff's treating psychiatrist, as not supported by treatment records or other evidence of record; (2) rejected a portion of the opinion of Dr. Boyle, plaintiff's consultative psychiatrist, based on alleged failure to find specific work-related functional limitations and invalid testing; and (3) rejected the opinion of Dr. Ritvo, the agency's consultative psychiatrist, as based primarily on plaintiff's allegations rather than objective evidence.

In determining whether plaintiff retains the residual functional capacity to perform the requirements of any past relevant work or other work existing in significant numbers in the national economy, the ALJ was required by 20 C.F.R. § 416.929 and Social Security Ruling

(SSR) 96-7p to consider all medical opinions from acceptable medical sources and all symptoms that could be accepted as consistent with the objective medical evidence.  (Tr. at 21.)  After considering the evidence and testimony of record, the ALJ found that plaintiff has the residual functional capacity to perform unskilled work, which involves little or no judgment to do simple duties that can be learned on the job in a short period of time and which ordinarily involves dealing primarily with objects rather than data or people.  (Id.)

The ALJ found support for his conclusion in the assessment of Dr. Colonna, in the findings of the agency's disability determination service sources, and in the statement by Dr. Ritvo that plaintiff could perform simple tasks.  The ALJ's discussion of the opinions of Dr. Ritvo, Dr. Barker, and Dr. Boyle demonstrates that he gave serious consideration to those opinions.  (Tr. at 21-22.)  In declining to accept Dr. Barker's opinion that plaintiff's was totally incapacitated and incapable of working, the ALJ cited evidence in the record contradicting such an extreme conclusion, including the doctor's own treatment notes.  (Tr. at 22.)  The ALJ rejected Dr. Boyle's opinion because it provided no information helpful in assessing plaintiff's functioning, was based on testing that the doctor himself considered invalid, and because Dr. Boyle had made clinical findings and mental status examination findings that were essentially normal.  (Id.)

The court finds that the ALJ sufficiently stated specific and legitimate reasons supported by substantial evidence in the record for not fully crediting Dr. Barker's conclusory assessment and Dr. Boyle's deficient report.  See Bayliss v. Barnhart, 427 F.3d 1211, 1216-17 (9th Cir. 2005); Batson v. Comm'r, 359 F.3d 1190, 1195 (9th Cir. 2004); Lester, 81 F.3d at 830-31.  Plaintiff's argument to the contrary is unpersuasive.

**IV.  ALJ's Failure to Credit Plaintiff's Statements**

It is well established that the determination of credibility is a function of the ALJ, acting on behalf of the Commissioner.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An ALJ's assessment of credibility should, in general, be given great weight.  Nyman v. Heckler,

779 F.2d 528, 531 (9th Cir. 1985). Thus, questions of credibility and resolution of conflicts in the testimony are functions solely of the Commissioner. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). In evaluating a claimant's subjective testimony regarding pain and the severity of his or her symptoms, an ALJ may consider the presence or absence of supporting objective medical evidence along with other factors. See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc); see also Smolen, 80 F.3d at 1285. Ordinary techniques of credibility evaluation may be employed, and the adjudicator may take into account prior inconsistent statements or a lack of candor by the witness. See Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

Nonetheless, an ALJ's rejection of a claimant's testimony must be supported by specific findings. Morgan, 169 F.3d at 599; Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993) (citing Miller v. Heckler, 770 F.2d 845, 848 (9th Cir. 1985)). Once a claimant has presented medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms merely because the symptoms are unsupported by objective medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Rather, "'the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" Light, 119 F.3d at 792 (quoting Smolen, 80 F.3d at 1281). See also Reddick, 157 F.3d at 722.

Here, the medical records document severe mental impairments which might reasonably be expected to cause symptoms such as paranoia, panic attacks, and delusions. However, while plaintiff alleges that she is totally unable to work due to her mental impairments, the ALJ made specific and detailed findings in not fully crediting her testimony to the extent that the testimony conflicted with the ALJ's findings. (Tr. at 22-23.) The treatment records and the objective findings of the treating and consultative professionals provide substantial evidence that
/////

1  plaintiff has the residual functional capacity to perform unskilled work, with appropriate

2  limitations.  (Id.)

3          The court finds that the ALJ fairly characterized the record and sufficiently stated

4  specific, clear, and convincing reasons for not fully crediting plaintiff's testimony regarding her

5  functional limitations.  See Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998).  Therefore,

6  plaintiff's argument to the contrary must be rejected.

7  **V.  Use of the Grids Despite the Presence of Non-Exertional Symptoms**

8          At the fifth step of the sequential evaluation process, the Commissioner can

9  satisfy his burden of showing that the claimant can perform other types of work in the national

10  economy, given the claimant's age, education, and work experience, by either (1) applying the

11  Medical-Vocational Guidelines (grids) in appropriate circumstances or (2) taking the testimony

12  of a vocational expert.  Burkhart, 856 F.2d at 1340 (citing Desrosiers v. Sec'y of Health &

13  Human Servs., 846 F.2d 573, 578 (9th Cir. 1988) (Pregerson, J., concurring)); Polny v. Bowen,

14  864 F.2d 661, 663-64 (9th Cir. 1988).  The grids are designed to show available work in the

15  national economy for individuals with exertional, i.e., strength, limitations, as impacted by the

16  factors of age, education, and work experience.  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(d)

17  & (e).

18          The grids may be used only when they "'accurately and completely describe the

19  claimant's abilities and limitations.'"  Burkhart, 856 F.2d at 1340 (quoting Jones v. Heckler, 760

20  F.2d 993, 998 (9th Cir. 1985)).  See also Reddick v. Chater, 157 F.3d 715, 729.  When a

21  claimant's non-exertional limitations are sufficiently severe that they significantly limit the range

22  of work permitted by the claimant's exertional limitations, the grids are inapplicable.  Burkhart,

23  856 F.2d at 1340; Desrosiers, 846 F.2d at 577; see also Heckler v. Campbell, 461 U.S. 458, 462

24  n.5 (1983); Tackett, 180 F.3d at 1101-02; Cooper v. Bowen, 815 F.2d 557, 560 (9th Cir. 1987).

25          Here, plaintiff contends that the ALJ should not have relied on the grids to

26  determine the availability of jobs plaintiff can perform and that the ALJ failed to consider that

1   plaintiff's symptoms will interfere with her ability to work on a continuous and sustained basis.

2   Plaintiff argues that the services of a vocational expert are necessary in order to determine

3   whether plaintiff is capable of performing any jobs that exist in substantial numbers in the

4   national economy.

5          The ALJ found that plaintiff has the residual functional capacity to perform

6   unskilled work at all exertional levels.  Applying the grids, the ALJ found plaintiff not disabled

7   because there are a significant number of jobs in the national economy that plaintiff can perform.

8   The ALJ did not err by applying the grids in this case because the ALJ determined that plaintiff's

9   non-exertional limitations do not limit the range of unskilled work available to her.  See 20

10  C.F.R. § 416.968; see also Eggleston v. Bowen, 851 F.2d 1244, 1247 (10th Cir. 1988) (presence

11  of nonexertional impairment does not preclude use of grids if nonexertional impairment does not

12  limit claimant's ability to perform work) .  A job is in the unskilled category when the work

13  "needs little or no judgment to do simple duties that can be learned on the job in a short period of

14  time."  Id.  The record does not support a conclusion that plaintiff's non-exertional limitations

15  limit the range of unskilled work otherwise permitted, given her lack of exertional limitations.

16  Therefore, the ALJ's use of the grids was not inappropriate, and testimony from a vocational

17  expert was not necessary under the circumstances.

18                              **CONCLUSION**

19         Accordingly, IT IS HEREBY ORDERED that:

20         1.  Plaintiff's motion for summary judgment is denied;

21         2.  Defendant's cross-motion for summary judgment is granted; and

22         3.  The decision of the Commissioner of Social Security is affirmed.

23  DATED: March 28, 2007.

24

25                                    _____

26  DAD:kw                            DALE A. DROZD
    Ddad1/orders.socsec/morrison0182.order     UNITED STATES MAGISTRATE JUDGE